IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JUAN GONZALEZ,

    Plaintiff,                    No. CIV S-07-0135 GEB KJM P

    vs.

KEITH HIGGINS, et al.,

    Defendants.             FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff is a prisoner proceeding pro se with an action under 42 U.S.C. § 1983. He alleges that defendant, Keith Higgins, a correctional officer with the California Department of Corrections and Rehabilitation (CDCR), used excessive force on plaintiff in violation of the Eighth Amendment. Defendant's motion for summary judgment is before the court. Plaintiff also asks for summary judgment, but that request is not timely and good cause does not support waiving the dispositive motion deadline; that request will be denied. See Docket Entries 14, 23 & 50.

I.    Standard of Review for Summary Judgment

        Summary judgment is appropriate when the movant demonstrates that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

1

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The opposing party must also demonstrate that the dispute is genuine, i.e., that the

1 evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool
2 v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

3       To establish the existence of a factual dispute, the opposing party need not
4 establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
5 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
6 trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce
7 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
8 Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963
9 amendments).

10       In resolving the summary judgment motion, the court examines the pleadings,
11 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
12 any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson,
13 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the
14 court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587.
15 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
16 produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen
17 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
18 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
19 show that there is some metaphysical doubt as to the material facts . . . . Where the record taken
20 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
21 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

22 II.    Factual Background

23       Many material facts in this case are undisputed. At all times relevant, plaintiff
24 was a prisoner at California State Prison-Sacramento. The incident that forms the basis for this
25 action occurred on June 4, 2006, while plaintiff was working his assigned job at the prison dining
26 hall. See Compl. Section IV; Answer ¶ 4. Officer Higgins was on duty in the dining hall at that

1  time. See Def.'s Undisputed Fact (DUF) No. 3. According to plaintiff's deposition testimony,
2  he and Higgins had a history of joking around. See Gonzalez Dep. Tr. at 17:3-25. Their
3  interaction had included plaintiff's joking with Higgins about his eyeglasses "quite frequently."
4  Id. at 18:2.
5           It is not disputed that a statement plaintiff made about Higgins' eyeglasses on
6  June 4, 2006 triggered the altercation that is now the subject of this case. Specifically, plaintiff
7  testified, "I asked him, hey, Mr. Higgins, do you go out in public looking like that with the big
8  old eyeglasses? That's when he got mad." Id. at 23:19-21; see also DUF Nos. 9-10 ("Plaintiff
9  Gonzalez made comments to Defendant Higgins that Plaintiff Gonzalez saw has [sic] caused
10 Defendant Higgins to become angry"). Then, according to Higgins' own rendition of the facts,

> Gonzalez stood up and Higgins stood up, then Gonzalez looked at
> Higgins. Higgins struck Gonzalez in the left and right cheek.
> Gonzalez raised his hands in front of himself. Plaintiff Gonzalez
> fell on the floor on his back. Higgins rolled Gonzalez on his back
> and placed him in handcuffs.

14 Def.'s Mot. at 3:24-4:2 (citing DUF Nos. 12-16). Plaintiff claims that Higgins struck him with
15 his fist. See Gonzalez Dep. Tr. at 20:3-4.
16          Gonzalez received medical treatment the same day as the incident. See Def.'s
17 Ex. 1. The prison medical report indicates reddened areas on both sides of plaintiff's face and
18 shows that plaintiff told the prison medical attendant, "I'm fine." Id. Plaintiff received no
19 further medical treatment as a result of the altercation. Gonzalez Dep. Tr. at 28:11-13. He was
20 not prescribed medication for his injuries. Id. at 29:3-5. Plaintiff claims that as a result of the
21 incident, he has "suffered injuries to his right side and left side of his facial area which effected
22 [sic] Plaintiff's mobility, eyesight, and the movement of his jaw, which still cause's [sic] Plaintiff
23 pain and suffering, Physical and emotional stress." Compl. at 4:7-11.[1] In his deposition, he
24 stated that "[t]he nature of the stress is when I get around officers that I don't know who are –

---

[1] Page references in the complaint are to those assigned by CM/ECF.

4

that I know from the past, I get paranoid. I can't trust people around me anymore." Gonzalez Dep. Tr. at 28:21-24. Plaintiff also stated in his deposition that he is bipolar and a paranoid schizophrenic. See id. at 10:12. No records have been submitted confirming his psychological diagnoses, if any indeed have been made. Plaintiff also says he takes medication and receives counseling for his bipolar condition. See id. at 11:7-14.

The prison's internal review suggests there was some dispute as to whether plaintiff or Higgins threw the first punch in the altercation. Higgins filed an incident report on the same day as the altercation, in which he stated that the first act of aggression occurred when "Gonzalez took a bladed stance and with a open right hand struck my left cheek. This was enough force to knock my glasses off my face." Opp'n, Ex. C. The medical report for Higgins likewise reflects that he stated to the medical attendant that the "inmate slapped me across the face." Id., Ex. D. Higgins provided the same version of events in his rules violation report, which precipitated a disciplinary hearing against plaintiff. See id., Ex. G. At the hearing, plaintiff pled not guilty and stated that "[w]hen I saw [Higgins] getting angry, I started to walk away. He came after me." Id. Higgins testified at the hearing that plaintiff struck him first. Id. Plaintiff was found guilty of battery of a peace officer in violation of prison regulations. Id.

Higgins later admitted to an investigator with the Office of Internal Affairs that he, not plaintiff, had "initiated the physical confrontation." Pl.'s Req. to File Addendum, Ex. I at 9-10.[2] Higgins admitted in that interview, "I shoved him hard." Id. at 10. However, Higgins continued to deny throwing the first punch. Id. Higgins further admitted that he falsified his incident report "by omitting any reference to [Higgins'] initiating the physical confrontation with Gonzalez." Id. These findings by the Office of Internal Affairs led to Higgins' suspension without pay for one year.

---

[2] Plaintiff requests to file records from the Office of Internal Affairs as Exhibit I in further support of his opposition to the motion for summary judgment. Defendant has not opposed the request. Accordingly, the court has considered Exhibit I in ruling on defendant's motion.

      Given the conflicting testimony of the parties, the proper focus is not on Higgins' subsequent retraction of his accusations against plaintiff but on the presumption, mandatory in every summary judgment inquiry, that the evidence be viewed in the light most favorable to the non-movant. Here, that means proceeding on the presumption, not yet proven but supported by the evidence in the record and by a fair reading of the defendant's undisputed facts, that defendant Higgins threw the first punch.

III.    Analysis

      Plaintiff's excessive force claim alleges that "Higgins' physical assault of Plaintiff was unnecessary, unwarranted and constituted an unlawful use of force which proximately caused Plaintiff great pain and suffering" and that it "was without any legal justification whatsoever." Compl. at 4:1-6. Plaintiff specifically alleges the assault was "retaliation for Plaintiff's joking around about Defendant's eyeglasses." Id. at 5:5-6.

      For prisoners, "the Eighth Amendment 'serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified.'" Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) (quoting Whitley v. Albers, 475 U.S. 312, 327 (1979)). In Hudson v. McMillian, the Supreme Court clarified the standard to be used in analyzing excessive force claims under the Eighth Amendment:

> [W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

503 U.S. 1, 6-7 (1992). The seriousness of injury caused by the use of force may be considered in determining whether the force was excessive for constitutional purposes, but it is not determinative. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant

/////

/////

1   injury is evident." Hudson, 503 U.S. at 9.  A full analysis therefore goes beyond simply asking
2   how badly injured the prisoner was as a result of the use of force:

> In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and "any efforts made to temper the severity of a forceful response."  The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it.

7   Id. at 7 (citing Whitley, 475 U.S. at 321).

8   Defendant Higgins submits three main points in support of his argument for
9   summary judgment.  First, he argues that in using force against plaintiff he was carrying out his
10  responsibility to maintain discipline and enforce prison rules.  He also argues that his use of
11  force, even if unnecessary or inappropriate in hindsight, was de minimis and therefore did not
12  rise to the level of a constitutional violation.  Finally, defendant claims he is protected by the
13  doctrine of qualified immunity.  These arguments, and especially the first two, are somewhat
14  intertwined in the defendant's motion.  This is understandable given how closely related, if not
15  overlapping, the various standards and rules governing this claim can become.  In any event, the
16  court shall address each argument in turn.

17  A.   No Good Faith Effort to Maintain Discipline and Enforce Prison Rules

18  Defendant argues that, even viewing the facts in the best light for the plaintiff,
19  "the alleged contacts between Plaintiff and Defendant were for the purpose of restoring discipline
20  and ensuring compliance with prison rules.  Plaintiff had made disparaging comments about
21  Defendant in the presence of other inmates, conduct that is a violation of prison rules."  Def.'s
22  Mot. at 6.  This argument invokes Hudson's allowance of force in a "good faith effort to maintain
23  or restore discipline," but the factors laid out in Hudson and the reasonable inferences drawn
24  from the facts and evidence of record weigh against summary dismissal of plaintiff's claim.

25  An inmate's violation of a prison rule does not provide *carte blanche* for use of
26  force as a means of discipline.  Under Hudson, "it is proper to evaluate the need for the

7

application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7 (citation omitted).  Here, there is evidence that Higgins' use of force was not reasonably necessary; the use of his fists to strike plaintiff first, assuming that is what happened, was not commensurate with the perceived infraction of plaintiff's making fun of Higgins' eyeglasses.  Plaintiff and Higgins had engaged in "disparaging" banter before, but it had never led to any effort by Higgins to correct plaintiff, much less a physical confrontation.  In fact this was not the first time plaintiff had made fun of Higgins' eyeglasses, and there is no evidence to suggest this behavior was ever addressed as a rule violation until the altercation on June 6.  It is worth noting as well that plaintiff was later disciplined by the prison for having struck Higgins, not for making fun of Higgins' eyeglasses.  Moreover, even if joking about Higgins' appearance was a violation that required Higgins to discipline plaintiff, that no previous effort had been made to do so without resort to physical force suggests the use of force in this instance was not reasonably proportionate to the violation and thus not undertaken as a good faith measure to alleviate a threat or enforce a rule.[3]

As for the putative threat that plaintiff actually posed to the maintenance of order in the prison, there is no evidence to suggest, as defendant asserts, that plaintiff's words "could have the propensity to inflame or otherwise agitate inmates." Def.'s Mot. at 6.  Again, there is evidence that plaintiff's insult was not accompanied by any physical aggression, and the nature of the words he used are not obviously or necessarily incendiary or inflammatory.  See Long v.

---

[3] The reasonable inference that this was not a good faith use of force to restore discipline is further supported by a copy of the CDCR's written policy on the use of force, which the plaintiff has attached as an addendum to his opposition.  That policy states that force is not to be used on an inmate unless it is in self defense or the defense of others, or "it is reasonably necessary . . . to accomplish the lawful performance of Peace Officer duties."  Addition to Opp'n (docket no. 45), Exhibit B.  The same policy says that "[w]hen practical, an employee shall consider other means of controlling an inmate before resorting to the use of force."  Id.  While the CDCR's policies are not dispositive of the constitutional question at issue here, it is relevant that the language of this particular policy is consonant with Hudson's "core judicial inquiry" into the use of force as a good faith means of maintaining discipline.

1  Morris, 485 F.Supp.2d 1247, 1252 (D. Kan. 2007) (denying summary judgment because
2  "[a]lthough plaintiff had verbally challenged [the officer's] command, plaintiff made no
3  aggressive move toward [the officer], was in restraints and was not an immediate threat to prison
4  order and safety").  At the very least, reasonable jurors could differ on the question of whether
5  and to what extent prison safety was threatened by this single incident of a joke about a guards'
6  eyeglasses or whether it was simply a joke taken too personally.

7  In sum, there is a material dispute on the question of Higgins' good faith in his
8  use of force against plaintiff as a legitimate disciplinary measure.  The motion for summary
9  judgment should not be granted on this basis.

10  B.  No De Minimis Exception

11  Defendant Higgins also argues that the force he used was de minimis.  See Mot. at
12  7-9 (citing Hudson, 503 U.S. at 9) (explaining, "[t]hat is not to say that every malevolent touch
13  by a prison guard gives rise to a federal cause of action").  The defendant focuses more on the
14  relatively minor injuries that plaintiff suffered (redness and swelling in his cheeks) and less on
15  the nature of force used (two punches or slaps to the face).  This is not the proper emphasis under
16  Hudson.  The proper emphasis "focus[es] on the amount of force used, not the nature or severity
17  of the injury inflicted."  Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (emphasis in
18  original).  In Hudson, the Supreme Court rejected the theory that a prisoner must show use of
19  excessive force plus serious injury and reversed the Fifth Circuit's refusal to recognize the
20  plaintiff's claim because his injuries were "minor."  Hudson, 503 U.S. at 9.  The Court in
21  Hudson focused on the nature of the force used, saying that "the blows directed at Hudson, which
22  caused bruises, swelling, loosed teeth, and a cracked dental plate, are not de minimis for Eighth
23  Amendment purposes."  Id.

24  It is relevant, therefore, that while Gonzalez suffered only from redness of the
25  cheeks and possible soreness and swelling in his jaw, the force that Higgins used – i.e., hitting
26  him in the face – is very similar to the use of force that violated the Eighth Amendment in

1  Hudson.  And while neither Hudson nor any other case addressing a similar use of force has gone
2  so far as to say that an officer's blow to a prisoner's head with his fist is per se excessive under
3  the Eighth Amendment, Hudson does contain an instructive illustration:  "To deny, as the dissent
4  does, the difference between punching a prisoner in the face and serving him unappetizing food
5  is to ignore the 'concepts of dignity, civilized standards, humanity, and decency' that animate the
6  Eighth Amendment."  Id. at 11 (citations omitted).  See also Burton v. Kuchel, 865 F.Supp.456,
7  463 (N.D. Ill. 1994) (ruling that the officer's "gratuitous punch in the stomach is of sufficient
8  gravity to warrant putting the issue before a jury, even though [the plaintiff] does not aver any
9  significant bruises or swelling").

10         Consideration of the de minimis exception is closely tied to the core inquiry into
11 the officer's good faith, which naturally requires a contextual look at the use of force to
12 determine how necessary the force was.  See, e.g., Thomas v. Stalter, 20 F.3d 298, 302 (7th
13 Cir.1994) (citing the lack of apparent reason for the attack, the fact that the officer used a
14 clinched fist, and the officer's words "shut up" to conclude that "[a] punch in the face to subdue
15 [the prisoner] was not necessary to carry out the court order").  The factual context of the blows
16 inflicted here – i.e., as a response to a joke about the defendant's eyeglasses – does not support
17 summary judgment.

18         The defendant attempts to contextualize his use of force as having been
19 "provoked." Def.'s Mot. at 8.  He also argues that the maintenance of prison order was threatened
20 because "the Plaintiff made disparaging personal remarks to a correctional officer in the presence
21 of other inmates...."  Id.  Plaintiff's version of events is that he posed no physical threat to
22 Higgins and that the provocation was purely verbal.  As another court put it in a case where a
23 correctional officer ended an exchange of insults with three blows of his baton, "[v]erbal
24 provocation alone does not justify a response such as occurred in this case, and whether there
25 was any more than verbal provocation by [the inmate] is in genuine issue on any fair reading of
26 this record."  Miller v. Leathers, 913 F.2d 1085, 1089 (4th Cir. 1990).  When viewed in the light

favoring the plaintiff, the evidence of record, including especially the parties' history of joking harmlessly with each other and the lack of any evidence suggesting that prison order was threatened by the joke in the dining hall, supports the same reasoning here.

Defendant cites several cases in which the de minimis exception was found to apply. Again, the factual context of those cases explains why the de minimis exception applied there and does not apply here. In Outlaw v. Newkirk, 259 F.3d 833, 839 (7th Cir. 2001), for example, the court found the slamming of the inmate's hand in the cuffport door of his cell furthered a "legitimate security reason" in a maximum security section of the prison. The prisoner had stuck his hand through the door while uttering hostile words at the guard. According to the court's review of the facts of that case, "[i]t is undisputed that such activities could present a hazard to both guards and inmates." Id. at 838-39. Here, though, it is reasonably disputed whether plaintiff's joke provided a "legitimate security reason" for slapping him in the face.

Likewise, in Lunsford v. Bennett, 17 F.3d 1574 (7th Cir. 1994), prison order was undisputably at stake when the alleged injuries were sustained. The prisoners had staged a protest by simultaneously and repeatedly flushing their toilets until the cell block was flooded in several inches of water. One of the guards dumped a bucket of water onto one of the prisoners' head. The prisoner claimed the bucket also hit him in the head, causing headaches. In ruling that the use of force with the bucket was de minimis, the court noted that "[i]nstitutional security certainly was threatened by this disturbance and prison officials were obliged to restore order and control in these tumultuous situations." Id. at 1582. In contrast here, there is no evidence that as a result of plaintiff's joke, a "tumultuous situation" in the dining hall could have arisen.[4]

---

[4] Risdal v. Martin, cited by defendant, states simply that being "taunted and jostled" by prison officials was "not the type to be physically injurious or painful." 810 F.Supp. 1049, 1056 (S.D.Iowa.1993). The use of force in Risdal is distinguishable in "type" from the punches thrown here. Furthermore, there is no factual context provided for the uses of force in the other cases that the defendant lifts from Risdal and identifies in a block quote in his motion. See Def.'s Mot. at 8. They are therefore of little instruction for present purposes, especially

For the foregoing reasons, the undersigned finds there are facts that contradict the defendant's position that his use of force was de minimis. Therefore this exception also should not apply as a basis for summary judgment.

C. No Qualified Immunity

Government officials performing discretionary functions generally are shielded from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether a governmental officer is immune from suit based on qualified immunity, a court considers two questions. One is, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? Saucier v. Katz, 533 U.S. 194, 201 (2001).[5] The second is "whether the right was clearly established." Id. "If the law did not put the [defendant] on notice that [his] conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id. at 202. The proper inquiry is whether it would be clear to a reasonable prison official that "his conduct was unlawful in the situation he confronted," by reference to decisional law agreeing that "certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand." Saucier, 533 U.S. at 201. Decisional law need not proscribe the exact conduct in question; it need only make the unlawfulness of the conduct apparent. See Hope v. Pelzer, 536 U.S. 730, 739 (2002).

/////

---

compared to those numerous cases cited herein, where uses of force similar to Higgins' were found to be excessive.

[5] The Supreme Court recently has receded from Saucier in providing that the two-step procedure it mandated should not be regarded as an inflexible requirement; rather courts may exercise discretion in determining which of Saucier's two prongs to address first in light of the circumstances of a particular case. See Pearson v. Callahan, ___ S. Ct. ___, 2009 WL 128768 (Jan. 21, 2009). In these findings and recommendations, the court has exercised its discretion and addressed the prongs in the order set forth above.

The facts alleged, if accepted as true by a jury, comprise a violation of plaintiff's right under the Eighth Amendment to be free from the malicious and sadistic use of force to cause harm. Hudson, 503 U.S. at 9. Furthermore, Hudson's definitive constitutional dichotomy between force "applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," id. at 6-7, was well established when the facts giving rise to plaintiff's cause of action occurred. An officer in Higgins' situation reasonably should have known that a hit to the face, or two, in response to a personal slight about his eyeglasses would contravene plaintiff's constitutional rights. Higgins cannot benefit from the doctrine of qualified immunity here.

### D. No Exception for a Personal or Isolated Attack.

Application of the Hudson factors alone is enough to find against defendant Higgins on his motion, but Hudson left open a narrow question also relevant to this case. The correctional officers sued in Hudson argued to the Supreme Court that the altercation in that case "arose from 'a personal dispute between correctional security officers and a prisoner,' and was against prison policy." Id. at 11 (citation omitted). The Hudson officers sought application of an exception recognized by the Second and Fifth Circuits that an isolated and unauthorized attack by a guard is not punishment under the Eighth Amendment and therefore not constitutionally cognizable. See Johnson v. Glick, 481 F.2d 1028, 1032 (2nd Cir. 1973), receded from on other grounds, Graham v. Connor, 490 U.S. 386 (1989); George v. Evans, 633 F.2d 413, 416 (5th Cir.1980) ("a single, unauthorized assault by a guard does not constitute cruel and unusual punishment"). The Supreme Court in Hudson did not grant certiorari on the issue of whether a personal dispute that leads to the use of force by a correctional officer implicates the Eighth Amendment. The Court thus left intact a split among those circuit courts that have addressed the "isolated attack" or "personal dispute" question.

The Ninth Circuit has never recognized the "isolated attack" exception, although cases it has decided suggest disapproval of the reasoning behind the exception. See, e.g.,

McRorie v. Shimoda, 795 F.2d 780, 782-84 (9th Cir.1986); see also Pelfrey v. Chambers, 43 F.3d 1034, 1037 (6th Cir.1995) (holding "[w]e categorically reject defendant's argument that 'an unprovoked attack is not punishment'"). The fact that Higgins' use of force was an isolated reaction to a personal slight, accepting plaintiff's version of events, does not favor summary judgment.

IV.   Conclusion

For the foregoing reasons, the motion for summary judgment is not well-taken.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The defendant's motion for summary judgment (docket entry 35) be denied.

2. The plaintiff's motion for summary judgment (docket entry 55) be denied.

3. Plaintiff be ordered to file his pretrial statement within thirty days of adoption of the foregoing recommendations. Defendant be ordered to file his pretrial statement within thirty days of service of plaintiff's.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 3, 2009.

_____
U.S. MAGISTRATE JUDGE

4 gonz0135.57